## BROWN & McCOY vs. DELOACH.

1. A father is bound to pay a debt contracted by his minor child, if he authorized the child to contract it; and a promise by the father to pay the debt, in certain events, is a fact admissible to the jury on the question, whether the father did, or did not, authorize the son to contract the debt.

2. A firm of merchants furnished a minor with goods, consisting of a plated chain, two gold pens and pencil cases, a cassimere suit of clothes, two pairs of kid gloves, and other similar articles, and proved by a witness that "the goods were necessaries and suitable to the condition" of the minor. There was no proof that the minor had not, already, a supply of such goods. The father of the minor was sued for the price of the goods. *Held*, That even if a father is bound to pay for necessaries furnished to his child, and, even if these goods are such as can be included in the term necessaries, yet, that the father is not liable to pay for them, unless it be shown that the child, when furnished with them, was destitute of such goods.

Nonsuit, and motion to reinstate the case. Decision by Judge Lamar, in Talbot Superior Court, March Term, 1859.

Brown & McCoy brought suit (for the use of Thomas A. Brown) against Simeon Deloach on an account for goods, &c., furnished by said firm to Seaborn Deloach and charged on the books of the firm to Seaborn Deloach.

Plaintiffs introduced as a witness Augustus C. McCoy, who testified that the account attached to the declaration was correct; that the goods were all sold and delivered to Seaborn Deloach, a son of the defendant, and charged to the son on plaintiff's books; that the credit was given exclusively to the son and not to the defendant; that the goods were necessaries and suitable to the condition of the purchaser; and that said son was, at the time of the

Brown & McCoy vs. Deloach.

purchase, under the age of twenty-one years. McCoy also testified, that at the close of the year in which said account was made, defendant came to the store of plaintiffs and paid off his own account. Witness presented him with the account against his son, (now sued upon,) and defendant told witness if he would let the account lie over until the next fall it should be paid. That if his son did not pay it, he would.

Whereupon, defendant objected to so much of the testimony of the witness as went to show any liability or promise on the part of the defendant to pay said debt, and moved to exclude the same from the jury, on the ground that such promise was void by reason of the statute of frauds and perjuries. The promise was admitted to have been a verbal promise. The court sustained defendant's motion and excluded said testimony; to which ruling, plaintiffs, by their counsel, excepted. The plaintiffs having no further evidence, the court, on motion, granted a nonsuit. Afterwards, and during the same term, plaintiffs moved to reinstate their case on the ground that the court erred in excluding said testimony. The court refused the motion, and plaintiffs excepted, and now assigns the said rulings as error.

B. Hill, for plaintiffs in error.

Smith & Pou, *contra.*

Judge Stephens absent.

*By the Court.*—Benning, J., delivering the opinion.

Was the court below right in excluding from the jury the defendant's promise to pay his son's debt "the next fall," if the plaintiffs would let the debt lie over till then, and the son should fail to pay it? We think not.

If the son's account was contracted by the authority of

the father, it was a contract binding on the father. Anything, then, from which the jury would have been at liberty to infer that the son had been authorized by the father to contract the account, was admissible as evidence to the jury. This promise of the father to pay the account, in certain events, was a thing from which the jury might have inferred that the son had been authorized by him to contract the account, although it was not a thing from which they were bound so to infer. The promise might have been the result of other reasons than a consciousness in the father that he had authorized the creation of the account; as, of a wish to save his son's credit; of a desire to spare his son's sensibilities; of an opinion that the law made him liable to pay the account; but then, as the promise might have been the result of consciousness in him, that he had authorized the creation of the account, the promise was proper matter for the jury—it being the business of a jury, when a fact will bear several different interpretations, to say which one of them it shall bear.

[1.] We think, then, that the exclusion of the promise from the jury was an error.

The ground on which the court put the exclusion, probably, was, that the promise was a promise to answer for the debt of another, and was, therefore, a promise on which an action was forbidden by the statute of frauds. But, if the account was contracted by the authority of the father, the person making the promise, the debt was the father's debt, and not the son's; and, therefore, the promise was not a promise to answer for another's debt, but was a promise to answer for his own debt.

The promise having been excluded from the jury, was the other evidence sufficient to carry the case to the jury, and prevent a nonsuit? That is the next question.

The other evidence, at most, was that of a witness who said, that the son was not twenty-one years old, and that

"the goods were necessaries, and suitable to the condition of the " "son." A bill of the goods was attached to the declaration. It is as follows:

Mr. SEABORN DELOACH,

Bought of BROWN & McCOY.

1854.

Dec. 27—1 plated chain.................................... 4 00

1855.

April 3—1 gold pen and silver case.................. 3 50

"   —1 pr. kid gloves, 1 37; May 14, 1 alapaca coat, 6 00...................................... 7 37½

"   —1 pair Ga. shoes, 3 00; 3 yards check linen, 1 50...................................... 4 50

June 16—1 valise, 4 00; 2 silk cravats, 2 75......... 6 75

July 5—1 pr. white pants, 5 00; Aug. 7, 7 yards ginghams, 1 40.............................. 6 40

" 15—1 gold pen silver case, 2 00; Oct. 1, 1 cassimere suit, 22 50..........................24 50

"   1 pr. boots, 8 00; 3 pr. ½ hose, 1 12½........ 9 12½

Nov. 21—1 pr. Ga. shoes, 3 50; (24) 2 shirts, 4 00.. 7 50

Dec. 20—1 pr. kid gloves, 1 50; 2 collars, 50 ...... 2 00

" 24—1 umbrella.................................. ...... 3 00

$78 65

Here, then, two questions arise; one, whether a father is bound to pay for necessaries furnished to his minor child, but furnished without his authority; the other, whether such articles as those contained in this bill of goods are necessaries. The English cases seem to answer the first question in the negative.—Baker vs. Keer, 2 Stark. R., 501; Flenk vs. Torlemache, 1 Car. & P., 5; Blackburn vs. Mackay, 1 Car. & P., 1; Roby vs. Abbott, 6 Carr. & P., 286; Clements vs. Williams, 8 Carr. & Pay., 58; Seaborne vs. Maddy, 9 do., 497; Shellon vs. Springett, 20 English Law and Eq., 28; Mortimer vs. Wright, 6 Mees. & Welsb., 482.

Brown & McCoy vs. Deloach.

And we very much incline to think that the English cases are in the right. Not that we know of any very general variance in the American cases. Even if a father is bound to furnish his child with necessaries, and fails to do so, that does not impose an obligation on any third person to discharge this duty of the father. If a third person does it, then he does it voluntarily, and what right have voluntary services to expect more than voluntary compensation. If we may, of our own accord, discharge this duty for others, and compel them to pay us for it, why may we not, of our own accord, pay their debts, or discharge any of their other duties for them, and compel them to compensate us for so doing?

But, conceding that a father is bound to pay a third person for necessaries furnished to his child, are such articles as those contained in the above bill of goods necessaries? Surely not. There is not one of them that can be called a necessary. What are necessaries? Food, clothing and lodging, of a cheap style. We may throw in medicine. It is the right of a father, however rich, to bring up his child on a plan of the utmost economy. This right is invaded whenever a third person steps between him and his child, and furnishes the child with such articles as he presumes to deem "suitable to the child's condition in life." The right is outraged when he also requires the father to pay for the articles.—See Simpson vs. Roberts, 1 Esp., 17; Grantz vs. Gill, 2 do., 471.

But granting that any articles which a witness may consider suitable to a child's condition in life are necessaries to the child, yet that can be true only when the child does not already possess such articles. And there is no evidence in this case that the child did not have a proper supply of such articles as those furnished to him by the plaintiffs in error; and, in the absence of such evidence, it is to be presumed that he did have; for, it is to be presumed, until the contrary be shown, that the father did

his whole duty, and, therefore, that he supplied the child with such articles,—if, indeed, to supply the child with them was his duty.

Upon the whole, then, we think that the evidence, when the father's promise was excluded from it, was not sufficient to support the action, and, therefore, there was nothing in the evidence, as it then stood, sufficient to prevent the court from granting the nonsuit. Still, the granting of the nonsuit was an error, for the reason that the promise was improperly excluded; which, if it had been admitted, would have been sufficient to carry the case to the jury. We must, therefore, order the case to be reinstated.

Nothing need be said of the last exception—that to the refusal of the court to reinstate the case.

Judgment reversed.