CASE 2—PETITION EQUITY—SEPTEMBER 29.

# Smith's ex'r vs. Smith, &c.

APPEAL FROM WARREN EQUITY AND CRIMINAL COURT.

1.  "If an infant dies without issue, having title to real estate, derived by gift, devise, or descent, from one of his parents, the whole shall descend to that parent and his or her kindred," &c., &c. The foregoing provision of sec. 9, chap. 30, 1 Stant. Rev. Stat., 421, does not embrace real estate derived by gift, devise, or descent, from a grandparent.

2.  Real estate derived by an infant, by devise from his maternal grandfather, if he dies an infant without issue, will descend to the father of such infant.

J. R. UNDERWOOD,                              For Appellants,
                        CITED—
    1 Rev. Stat., 262, chap. 21.
    1 Morehead & Brown, 560–562 (4th sec.), 563.
    1 Mon., 75; Clay, &c., vs. Cousins.
    6 J. J. Mar., 47; Duncan vs. Lafferty's adm'r.
    Rev. Stat., chap. 30, sections 8 and 9.
    14 B. Mon., 571; Turman vs. White's heirs.
    16 B. Mon., 313; Carr and wife vs. Estill.
    17 B. Mon., 9; Talbott's heirs vs. Talbott.

GEO. C. ROGERS,                               For Appellees,
                        CITED—
    6 J. J. Mar., 46–7; Duncan vs. Lafferty's adm'r.
    5 Dana, 297.
    18 B. Mon., 863; Driscoll vs. Hanks.
    15 B. Mon., 313; Stephenson vs. Hagan.
    14 B. Mon., 571; Turman vs. White's heirs.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

William B. Smith, late of the county of Warren, made and published his last will, which contains the following clause :

" 4. I will and desire that all my land in Warren and Edmonson counties be equally divided, quantity according to quality, between the children of my son John Smith, my son James Smith, my daughter Mary Ann Medley, my daughter Harriet Smith, my son Lannes Smith, my grand-daughter Maria A. Smith, and my daughter Betsy Landcaster. The above named lands are to remain permanently in the family, not to be sold for debts of any kind, nor to any person, but to one or more of my heirs. If any one of the above named heirs should wish to sell his or her interest in the above named lands, he or she shall sell to some one or more of the above named heirs, and to no other person or persons, under penalty of forfeiture of his or her interest in said lands."

After the death of the testator, his grand-daughter Maria A. Smith, who was the only child of a deceased daughter, died in infancy and childless, never having married, leaving her father surviving her, who instituted this action in equity against the guardian of his said daughter, the executor of the testator, and his surviving devisees, for the lands, slaves, and personalty, which were devised and bequeathed to her by her said grandfather, claiming the whole as heir to his deceased daughter.

The primary and important question in this controversy is, did the *real estate* of the infant derived by devise from her maternal grandfather pass at her death to her father, or to her collateral kindred, the descendants of her grandfather ?

The 1st *section* of the *statute* on descent and distribution, *chapter* 30, 1st *volume Revised Statutes*, 419, prescribes

" That when *a person* having right or title to any real estate of inheritance shall die intestate as to such estate, it shall descend in parcenary to his kindred, male and female, in the following course: 1. To his children and their descendants; if *none*, then—2. To his father, &c., &c." This is the general rule on the subject in very comprehensive language, including infants as well as adults, and also all the real estate of inheritance to which the intestate may have right or title, without regard to the manner in which the same was derived.

To this rule there are exceptions, one of which is contained in the 9*th section* of said *statute*, and is in the following language: " If an infant dies without issue, having title to real estate, derived by gift, devise, or descent from one of *his parents*, the whole shall descend to that *parent*, and his or her kindred as hereinbefore directed, if there is any," &c., &c.

The 8*th section* of this *act* provides that when *a person* dies intestate, and without issue, having real estate of inheritance, the gift of either of his *parents*, such *parent*, if living, shall inherit the whole of such estate.

By this section the act of 1796 is so far changed as to cast the inheritance upon the mother, or, if the word *parent*, as there used, is to be understood in the comprehensive sense contended for, upon the maternal line of a child who dies intestate, and over twenty-one years of age, having real estate of inheritance, derived from the mother or from the maternal line; and from this change, and the change in the 9*th section supra* of the phraseology, in which *the words "from one of his parents"* are inserted, it is argued by counsel for appellants that an intention on the part of the *Legislature* must be deduced to extend this right of inheritance to *grand-pa-*

*rents,* and their descendants, where the estate is derived from such *grand-parents.*

A satisfactory if not conclusive reason is at hand for making both these changes, wholly independent of the one assigned by appellant's counsel.

1. No possible motive or reason could exist for declaring that the father of an adult child, dying intestate, and without issue, should inherit his real estate derived from the father, which did not with equal force urge the claims of the mother where the estate was derived from her. Natural justice demanded it, to the pressure of which the Legislature yielded, and adopted the 8*th section of the Revised Statutes,* inserting in it the word parents, so as to include the mother.

2. The fifth section of the act of 1796 provides, that where an *infant* died without issue, having title to any real estate of inheritance, derived by purchase or descent from the father, the mother of such infant should not succeed to, nor enjoy the same, nor any part thereof, if there be living any brother or sister of such infant, or any brother or sister of the father, or any lineal descendant of either of them.

Section six of said act contained a like provision in favor of the mother and her kindred, excluding the father, where her infant child died without issue, leaving title to real estate derived by purchase or descent from her. (1 *B. & M., sec.* 563.)

By the adoption of the 9*th section of chapter* 30, *of the Revised Statutes, supra,* and inserting the words " *his parents,*" one section was made to contain all that is embraced in sections five and six of the act of 1796, condensed ; and the time and space saved thereby would recommend it to the consideration and approval of the Legislature ; and as corroborative of this view, we may

mention, that, as early as 1831, the sixth section of the act of 1796 came before this court for interpretation, in the case of *Duncan vs. Lafferty's adm'r* (6 *J. J. Mar.*, 46). The facts of that case, as stated in the opinion, are as follows: Abijah Brooks died, leaving a tract of land, part of which descended to his grandson, Abijah Duncan, whose mother was a daughter of Brooks, and wife of the plaintiff in error; but she died before her father, and, consequently, the estate was cast upon her son by descent directly from his grandfather.

Abijah Duncan died a minor, leaving neither wife or child. The only question presented, then, was, did the estate of Abijah Duncan, upon his death, pass to his father, or to his mother's brothers and sisters? In that case it is said: " Abijah Duncan did not derive the estate by purchase or descent from his mother. She never had any title, and it is impossible, therefore, that she could have transmitted any to her son. The language of the exception, therefore, does not embrace the case ;" and the father was adjudged entitled to the estate. The only difference in the facts of that case from this is, that in this case the infant took the estate by devise; in that case, the estate passed to the infant by descent. But if Duncan had derived the estate by *devise* from his grandfather, the result would have been the same; because the language of the section then under consideration is in the alternative, viz: whether derived by purchase or descent. A case had then actually occurred in which it was adjudged by the highest judicial tribunal of the State, that the real estate of inheritance of an infant, inherited from his maternal grandfather upon his death, vested absolutely in his father. The opinion was known and accepted as a correct exposition of the law on the subject; and the successive Legislatures for twenty years

never interposed nor made any change in it, and have not done so yet, unless the construction shall now be given to the *9th section of the Revised Statutes*, before referred to, contended for by appellant's counsel. The facts stated show conclusively, that, for a period of twenty years at least, the Legislature never deemed a change necessary or proper.

But will the language of section 9, *supra*, admit of, or allow, the interpretation contended for? The definition of the word *parent*, according to every lexicographer that we have had the opportunity to consult, is derived from *pario*, to produce or bring forth, the regular participle of which would be *pariens;* but, by some corruption, it is usually written *parens*, and from which we have the word parent anglicized, which is defined "*father or mother*," *he or she that produces young*. This is the common understanding of the meaning of the term; and if it has ever been defined to embrace grandfather or grandmother, we have not been able to meet with it; and to so construe it, would be doing violence not only to the definition given by standard authors, but to the common usage and understanding of the country.

Moreover, in the *17th section of chapter* 30, *of Revised Statutes*, 426, the terms "*parent* and *grand-parent*" are used more than once in contradistinction to each other.

We cannot doubt, that if the Legislature had intended to change the law on the subject, it would have been done in direct and explicit terms, leaving nothing to perplexing interpretations and doubtful implications.

Wherefore, the judgment is *affirmed*.