CASE 19—ACTION BY JANE K. BRIDGES AGAINST SUSAN GUIER, &C. TO RECOVER LAND.—NOVEMBER 14.

# Guier, &c. v. Bridges.

### APPEAL FROM GRAVES CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL AND PLAINTIFF FILES CROSS APPEAL. AFFIRMED ON ORIGINAL APPEAL AND REVERSED ON CROSS APPEAL.

DESCENT AND DISTRIBUTION—INFANT'S REAL ESTATE—RIGHTS OF PARENTS.

Held: 1. Kentucky Statutes, section 1393, provides that realty of an intestate leaving no children or their descendants shall go to his father and mother equally; but section 1401 enacts that if an infant dies without issue, having title to real estate, derived by gift, devise, or descent from one of his parents, the whole shall descend to that one parent. HELD that, where an infant's title was through deeds from others than a parent, the land passed to both parents, by section 1393, and not to one, by section 1401, though one of the parents may have paid the purchase money.

LEE & HESTER AND R. A. BURNETT, FOR APPELLANTS.

In 1885 Luther L. Martin, an infant, eighteen years of age, died without issue, the owner of two tracts of land, one of forty acres, conveyed to him by H. Hodges in February, 1883, and the other, twenty-seven acres, conveyed by W. H. Martin, in November, 1884. His father, Wm. Martin, died in April 1900, leaving a will made in December 1891, in which he devised to his wife, Nancy J. Martin, all his real estate during her life, and at her death, his son, I. P. Martin, was to have eighty acres of land and one-half of a thirty-seven and one-half acre tract, and the balance was to go equally to his three daughters, Susan Guier, L. S. Grissom and Eliza Thomas, who are the appellants herein.

Nancy J. Martin, his widow, died six months after her husband, and by her will she gave to the appellee, J. K. Bridges, all her estate, real and personal.

The appellee, Mrs. J. K. Bridges, in this action, claims that at the death of Luther L. Martin, the two tracts of land owned

Guier, &c. v. Bridges.

by him, forty acres and twenty-seven acres, descended jointly to his father, William Martin and his mother, Nancy J. Martin, and that by the will of Nancy J. Martin, devising all of her estate to appellee, she, appellee, is entitled to one undivided half of said two tracts of land, and asks for a sale thereof and a division of the proceeds.

The appellants claim that the said land was *given* to Luther L. Martin by his father, Wm. Martin, a few years before his death, that Wm. Martin purchased one tract from Hodges and the other from W. H. Martin and had Hodges and Martin respectively to convey same to Luther L., he, the father, paying for same, and that, being gifts from his father, although conveyed by others, the title, at the death of Luther L. Martin passed to the father from whom it came by gift to the son, and under the will of Wm. Martin, the title vested in his three daughters aforesaid, who, by their pleadings ask that their title to said land be quieted as against the claim of appellee, Mrs. Bridges.

Therefore, the only question for the court to decide, is, whether under the laws of descent and distribution, in this State, these two tracts of land which were bought and paid for by Wm. Martin for his son, Luther, although the deeds were made to Luther by the persons from whom they were purchased, descended, at the death of Luther (he being an infant at his death) to his father alone, or to his father and mother jointly?

Our contention is, that the land being clearly shown to be the gift of the father to his infant son, who died in infancy, under our statute, the title, on the death of the son passed by descent to the father from whom it came.

### AUTHORITIES CITED.

Kentucky Statutes, chap. 39, sec. 1401; Talbot v. Talbot, 17 B. Mon., p. 1; Power v. Montgomery, 83 Ky., 187.

W. J. WEBB, ATTORNEY FOR APPELLEE.

We contend that the title to the two tracts of land was neither derived by Luther L. Martin from his father, but that one of them was conveyed to him by Hodges and the other by his brother, W. H. Martin.

The fact that the father paid for the land, if he did pay for it, does not constitute a derivation of title from the father when the deed is made by another. The father can not pass a title that he did not own.

It is denied, however, and is not proven that the father paid

for the land which the son owned, especially as to the forty
acre tract.    The evidence shows that the son, Luther, had
money of his own and that his father had borrowed money
of him, and owed him money at the time of his death which was
never repaid.

The appellee, by her cross' appeal claims that the court erred
in dismissing her claim to the twenty-seven acre tract and
asks the court to reverse that part of the judgment and to af-
firm that part as to her ownership of one-half of the forty-
acre tract.

### AUTHORITIES CITED.

Kentucky Statutes, secs. 1373, 1401; Walden v. Phillips, 86
Ky., 302; Walls v. Chandler, 1 Ky. Law Rep., 402; Turner v.
Patterson, 5 Dana, 294; Applegate v. McClung, 3 Mar., 304;
Greenleaf on Evidence, vol. 1, p. 147; Crosswell's Exrs. and
Admrs., sec. 227, p. 547.

OPINION OF THE COURT BY JUDGE BURNAM, AFFIRMING ON ORIG-
INAL AND REVERSING ON CROSS APPEAL.

In 1885 Luther L. Martin died in infancy, the owner of
two tracts of land—one of 40 acres, in which he held title
by deed from H. Hodges, and the other of 27 acres, by
deed from W. H. Martin.   Both his father, William Martin,
and his mother, Nancy J. Martin, survived him.   The father,
William Martin, died in 1900, leaving a will by which he
devised to his wife, Nancy J. Martin, all of his real estate
during her life or widowhood, and at her death to go to
his three daughters, Susan Guier, L. S. Grissom and Eliza
Thomas, children by a former wife.   The wife, Nancy J.
Martin, died about six months after her husband, leaving a
will by which she devised all of her property, real and
personal, to the appellee, Jane K. Bridges, who instituted
this suit, claiming that Nancy J. Martin owned by inheri-
tance from her deceased son, Luther L. Martin, the fee to
one-half of the two tracts of land owned by him at his
death, and asked for a sale and division of the proceeds
thereof.   Appellants, in their answer, admitted that Luth-
er L. Martin died in infancy, holding title to the two

tracts of land, but allege that these tracts of land were paid for by William Martin, the father of L. L. Martin, who had the title taken to his son, and that, under section 1401 of the Kentucky Statutes, the title descended to the father, to the exclusion of the mother, and passed under his will to his three daughters. The appellee, in her reply, denied that William Martin furnished the money to pay for the lands owned by his son L. L. Martin at his death, and claimed that they were purchased with his own means.

The first section of the statute upon descent and distribution, which is section 1393 of the Kentucky Statutes, provides: "When a person having right or title to any real estate shall die intestate as to such estate without leaving children or their descendants, it shall go to his father and mother, one moiety each." Section 1401 provides: "If an infant dies without issue having the title to real estate derived by gift, devise or descent from one of his parents, the whole shall descend to that parent and his or her kindred as hereinbefore directed, if there is any, and if none, then in like manner, to the other parent and his or her kindred. But the kindred of one shall not be so excluded by the kindred of the other parent, if the latter is more remote than a grandfather, grandmother, uncles and aunts of the intestate and their descendants." In speaking of this statute, Prof. Minor, in his Institutes, says: "This provision mars the symmetry of the original law of descents, and comes not out of Mr. Jefferson's 'quiver of choice arrows.' It arose out of a solicitude to prevent estates going out of the families where they originally belonged, and it is the only instance where any respect is paid by the statute to the blood of the first purchaser." It was enacted substantially in 1790 by the Virginia Legislature, and was adopted as a part of our laws

in 1796. But it has always been most strictly construed, and the statute has been held to apply only to those cases where the title to the real estate owned by the infant came to him by gift, devise, or descent from one of her parents. See Duncan v. Lafferty's Adm'r 29 Ky., 47; Smith's Ex'r v. Smith, 65 Ky., 522; Walden v. Phillips, 86 Ky., 302 (9 R., 569) 5 S. W., 757. The statute does not apply to gifts of money or other personal property, and it is therefore immaterial whether the land owned by the infant was paid for by him or his father. The word "title," when used in connection with real estate, is generally defined to be the evidence of right by which a person has possession of property. And in 2 Bl. Comm., 195, it is defined as the means whereby the owner of land has just possession of the property. The infant's title to the real estate in controversy did not come from his father, but from his vendors. We are therefore of the opinion that when he died in infancy, without leaving issue, the title to the real estate held by him passed, under section 1393 of the statute, to his father and mother in equal moieties; and the moiety with the mother inherited passed under her will to the appellee, J. K. Bridges.

For the reasons indicated, the judgment is affirmed on the original and reversed on the cross appeal, and remanded for proceedings consistent herewith.