## Huffman v. Hatcher, et al.

(Decided November 23, 1917.)

## Appeal from Pike Circuit Court.

1. **Alteration of Instruments—Authority or Consent of Parties.**—The general rule is that a change in a written instrument made with the consent of the parties thereto does not avoid it, and that it will be binding on the consenting parties in its altered form.

2. **Alteration of Instruments—Who May Not Complain of.**—If the parties affected by a change in an instrument do not complain thereof, others who are not parties to the instrument or affected by the change cannot, ordinarily, set up the change, unless there is evidence of fraud between the parties, to the injury of such third parties.

3. **Descent and Distribution—Section 1401 Kentucky Statutes—Application.**—Section 1401 of the Kentucky Statutes providing that when an infant dies without issue having title to real estate derived by gift, devise or descent from one of his parents it shall descend to that parent and his or her kindred, has no application in cases where the estate was derived from a grandparent.

4. **Liens—Action Against Father for Support of Infant.**—In a suit against a father for the support of his infant son the creditor has no lien by virtue of section 2089 of the Kentucky Statutes upon land inherited by the father from the son, since the debt sued for was not a liability of the son.

5. **Infants—Necessaries Furnished—Liability of Parent.**—It is a necessary consequence of the duty to support the child that the parent may in a proper case be held liable for necessaries furnished to the child by a third person; but in order to hold the parent liable there must be either an express promise to pay, or circumstances from which a promise can be implied, some clear and palpable omission of duty on the part of the parent in not furnishing necessaries to the child, or some special exigency rendering the interference of such person reasonable and proper.

6. **Life Estates—Death of Life Tenant—Liens.**—The estate of a life tenant of land ceases upon his death and the land cannot thereafter be subjected to a lien for the payment of a debt of the life tenant.

7. **Limitation of Actions—Claim for Support of Infant.**—A suit against a father upon an implied promise to pay for the support of his child is barred by limitation after five years.

STRATTON & STEPHENSON for appellant.

J. M. YORK and J. S. CLINE for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Frances M. Hatcher was the daughter of Hibbard Williamson and the mother of Anna Hatcher Huffman, the wife of Samuel Huffman. At the time of her marriage with Samuel Huffman, in 1896, Anna Hatcher was the mother of one child, Elinor Hatcher; and as the result of her marriage with Samuel Huffman, she became the mother of Joseph Huffman.

On December 16th, 1896, Hibbard Williamson and Caroline, his wife, executed and delivered to their granddaughter, Anna Hatcher Huffman, a deed conveying to her a house and lot in Pikeville in fee simple. The deed was recorded and returned to Anna Huffman. About two years thereafter, Hibbard Williamson applied to Anna for the deed, saying he wanted to add some more land to the lot. Anna gave the deed to her grandfather and he changed it by writing upon the margin the description of another strip of land adjoining the one originally described in the deed, and also by inserting in the granting clause and immediately after the name of Anna Huffman, these words, "to her, her life time, then to her children of her body." Williamson then carried the deed to the county court clerk's office, and to save the expense of another recording fee, he had the deputy clerk make changes on the deed book to correspond with the changes he had made upon the original deed. After holding the deed for quite a while, Williamson delivered it to Anna Huffman and she retained it. The changes were agreeable to the grantees.

Hibbard Williamson died testate in 1900, having devised a part of his real estate located in Pikeville to his widow, Frances M. Hatcher, for life with remainder to the children of her body, who then consisted of Anna Huffman and Lida E. Hellier.

On January 26th, 1901, Anna Huffman bought a tract of land containing 223 acres, and known as the "Pigeon Roost" tract, from her brother-in-law, Ralph A. Hellier, paying a part of the consideration therefor by transfering to Hellier her interest in a lot in Pikeville, which had been devised to her in remainder by her grandfather. The deed from Hellier conveyed to Anna Huffman an estate for life with remainder to her bodily heirs.

Anna Huffman died on September 23rd, 1905, leaving her husband, Samuel Huffman, and her two children, Elinor Hatcher and Joseph Huffman, surviving her. Soon after Anna's death her father, John H. Hatcher, was appointed guardian of his grandchildren, Elinor Hatcher

and Joseph Huffman. Samuel Huffman says the appointment was made without his knowledge. John H. Hatcher and his wife, Frances, took the two grandchildren to live with them as members of their family. In May, 1914, Joseph Huffman died while an infant, leaving his father, Samuel Huffman, his half-sister, Elinor Hatcher, and his grandfather and grandmother, John H. and Frances M. Hatcher, surviving him.

. In June, 1914, Samuel Huffman filed this action against John H. and Frances M. Hatcher, Elinor Hatcher and Lida E. Hellier, claiming to be the owner of an undivided half interest in the Pikeville house and lot, and the "added lot" adjoining it, which had been conveyed to Anna Huffman by Hibbard Williamson, and a like interest in the "Pigeon Roost" tract bought by Hellier, and asking that said tracts be divided, and one moiety allotted to himself and the other to Elinor Hatcher; and he further prayed that he be adjudged the owner of an undivided half interest in the estate in remainder in the tract of land which had been devised to Anna by her grandfather, Hibbard Williamson, and that his title to this last interest be quieted. The court sustained a demurrer to this last claim of Samuel Huffman to the remainder estate.

It will be observed the petition proceeds upon the theory that Anna Huffman at the time of her death owned a life estate in the Pikeville house and lot, and the "added lot," which had been conveyed to her by her grandfather, Hibbard Williamson, and also a life estate in the "Pigeon Roost" tract, with remainder in all of said tracts to her children, Joseph Huffman and Elinor Hatcher, in fee; and that Anna owned a vested remainder in the Pikeville real estate which Hibbard Williamson had conveyed to Frances M. Hatcher for life, with remainder to the children of her body, who were Anna Huffman and Lida E. Hellier.

In their answer the defendants, Frances M. and John H. Hatcher and Lida E. Hellier, denied that Anna Huffman owned a life estate in the lands described in the petition and alleged that she owned said land in fee simple. They sought to evade the effect of the Hibbard Williamson deed of December 16, 1896, by alleging that Williamson had unlawfully and wrongfully changed the original deed by inserting therein the words limiting Anna's fee simple therein to a life estate, as heretofore narrated, and that she consequently took a fee simple estate in both tracts, under the deed as originally written.

In the second paragraph of their answer the defendants sought to avoid the effect of the deed from Ralph A. Hellier to Anna, which upon its face conveyed a life estate, by alleging that Hellier being desirous of preventing Anna Huffman from wasting her estate, had, without her knowledge, executed the deed for the "Pigeon Roost" tract so as to convey her a life estate therein, when he should have conveyed her a fee simple title therein; that she fully believed, until a short time before her death, that Hellier had conveyed to her a fee simple title in the "Pigeon Roost" tract; and that she died shortly thereafter without having had the deed corrected, but that if she had lived she would have caused it to be corrected so as to invest her with the fee simple title.

By way of counter-claim against Samuel Huffman, John H. and Frances M. Hatcher alleged that Samuel Huffman failed to provide for his wife Anna during her life, or for her children; that Samued Huffman treated his wife in such a cruel and inhuman manner as to show a settled and permanent aversion to her; that by reason thereof she procured a divorce from him; that Samuel Huffman and Anna Huffman were subsequently re-married upon the promise of reformation on his part; that upon his failure to keep his word in that respect she obtained a second divorce from him; that during the greater part of the married life of Samuel Huffman and Anna Hatcher Huffman the defendants, John H. and Frances M. Hatcher, were compelled to support and care for Anna Huffman and her children; that they expended in this way the sum of $11,941.74; and they prayed that if Samuel Huffman should be entitled to recover anything herein by inheritance from his son, Joseph Huffman, that the cross-plaintiff be granted a lien on said property for said sum.

By his reply, Samuel Huffman traversed the affirmative allegations of the answer and cross-petition, and further alleged that upon the death of his wife, Anna Huffman, in September, 1905, John H. and Frances M. Hatcher earnestly entreated the plaintiff to let them have the care and custody of their grandson, Joseph Huffman, and that he had reluctantly permitted the Hatchers to take and keep Joseph as a member of their family; that John H. Hatcher had himself appointed guardian of the child; and that upon the solicitation and request of the Hatchers they kept Joseph and supported him until his death. He further alleged that he had no

contract or agreement whereby either of the Hatchers were to charge either for the support of his son Joseph or any other member of his family; and he denied that the Hatchers had made the expenditures which they claimed to have made for his wife, Anna Huffman, while she was divorced, or at any time. Huffman also relied upon the statute of limitations of five years and ten years as a bar to any recovery against him.

A large amount of proof was taken, and upon a trial the chancellor adjudged: (1) That Anna Huffman took a fee simple title under the deed of December 16th, 1896, from her grandfather, Hibbard Williamson; that the interlineations did not qualify or limit the estate originally conveyed; that Joseph's grandparents, John H. and Frances M. Hatcher, jointly inherited a one-half interest in the property therein conveyed; and that her husband, Samuel Huffman, had no interest therein; (2) that Samuel Huffman inherited from his infant son, Joseph, his undivided half interest in the "Pigeon Roost" tract, but he adjudged a lien upon that interest in favor of John H. Hatcher for the sum of $3,000.00 for the care and support of the infant son, Joseph Huffman, and ordered the land to be sold to raise that sum.

The chancellor further adjudged that John H. and Frances M. Hatcher recover "of the estate" of Anna Huffman the sum of $1,696.36, balance due them, presumably from Anna, although it is not so stated, "after giving proper credits for rents received by John H. Hatcher, and charging decedent with taxes and improvements on the lot, street assessments, and a lien discharged by John H. Hatcher on said lots, doctor's bills and funeral expenses"; and to secure the payment of this judgment a lien was placed upon the interest which Anna took under the deed from Hibbard Williamson.

From this judgment the plaintiff, Samuel Huffman, appealed, and John H. Hatcher has taken a cross-appeal.

Passing the question of practice raised as immaterial, and going to the merits of the case, we will first consider the effect of the alterations made by Hibbard Williamson in the deed of 1896 to Anna Huffman. These alterations were made with her consent.

In 2 Cor. Jur. 1238, the rule is stated as follows:

"A change made by the authority, or with the consent of the party, or in his presence and with his privity, must be accorded the same effect as if made with his own hand —that is, he cannot set it up to avoid liability—and if he seeks to enforce the instrument the alteration may be

set up against him.  The general rule is that a change made with the consent of the parties to the instrument does not avoid it, but it will be binding on the consenting parties in its altered form.''

Price v. Cockran, 1 Bibb. 470; Brown v. Warnock, 5 Dana 492.  See also Hall v. Wright, 137 Ky. 39, holding that a second deed between the parties for the same land operates as a substitute for the first deed.

Again, the same work in treating of the subject as to who may complain of alterations in an instrument, on page 1187, says:

''If the parties affected by a change in an instrument do not complain thereof, others who are not parties to the instrument or affected by the change cannot, ordinarily, set up the change, unless there is evidence of fraud between the parties, to the injury of such third parties.  The alterations must relate to the parties to the particular instrument altered.''

See Wicker v. Jones, 159 N. C. 102, 40 L. R. A. (N. S.) 69; Ann. Cas, 1914B 1083; Steeley's Creditors v. Steeley, 23 Ky. L. R. 996, 64 S. W. 642.

From the time the changes were made in 1898 until her death in 1905, Anna Huffman not only retained the deed without complaint, but the proof shows that she consented to the change and approved it.  It must, therefore, stand in its final form.

In holding that the alterations were ineffectual and that Anna Huffman nevertheless retained the fee under the deed as it was originally written the circuit court held that she likewise took a fee in the ''added lot,'' which was not embraced in the original deed.  This could not be, since Anna took whatever title she had to the ''added lot'' by force of the deed as altered; otherwise she had no title at all to the ''added lot.''  In our opinion the deed as altered must be treated as fixing her title to both tracts, there being no complaint thereto by her, her creditors, or third parties.

Anna therefore took a life estate with remainder to her children, Elinor Hatcher and Joseph Huffman; and, upon the death of Anna in 1905 Elinor and Joseph became the owners in fee under the will of their great-grandfather, Hibbard Williamson.  And, when Joe died in 1914, an infant without issue, his interest in the land passed to his father as his heir.  Kentucky Statutes, section 1393.

Section 1401 of the Kentucky Statutes, providing that when an infant dies without issue, having title to real

estate derived by gift, devise or descent from one of his parents, it shall descend to that parent, and his or her kindred, has no application in cases like the one before us where the estate was derived from a person other than the parent. This section has always been most strictly construed, and has uniformly been held to apply only to those cases where the title to the real estate owned by the infant came to him from one of his parents. In other cases the land of an infant descends as though he were an adult. Walden v. Phillips, 86 Ky. 302; Guier v. Bridges, 114 Ky. 148; Weisseger v. McDonald, 116 Ky. 862; Banks v. Cornelison, 159 Ky. 793; McDowell v. Kent, 175 Ky. 445.

The trial court therefore erred in holding that Samuel Huffman did not inherit the interest of his son Joe in the Pikeville house and lot, and the "added lot."

With respect to the "Pigeon Roost" tract, the trial court properly held, under the rule above announced, that Samuel Huffman did inherit from his son Joe his interest in that tract, his title thereto having come to him under the Hellier deed, and not from his mother, who held only a life estate under that deed. Guier v. Bridges, 114 Ky. 148; Hagan v. Clemons, 25 Ky. L. R. 1776, 78 S. W. 899.

We cannot, however, approve that portion of the judgment which gave John H. Hatcher a judgment against Samuel Huffman for $3,000.00, and a lien on the "Pigeon Roost" tract for that sum. It is true that section 2089 of the Kentucky Statutes provides that the heir or devisee may be sued in equity for any liability of the decedent, and that the creditor may thereby obtain a lien on any specified property descended or devised and not theretofore aliened. But that section speaks of a debt of the decedent—not of the debt of the heir. The counter-claim goes upon the theory that this was a debt against Samuel Huffman for the support of his son Joe by John H. Hatcher; consequently, it is an ordinary suit by John H. Hatcher against Samuel Huffman to recover judgment for the support of his son. In such a case the creditor can only obtain a lien by levying his attachment or execution; and, of course, he must obtain his judgment before he can proceed by execution.

Upon the question of Samuel Huffman's liability for the support of his son Joe by John H. Hatcher, both parties agree that there was no express contract upon the subject. Hatcher asserts, however, that Huffman abandoned Joe to Hatcher's care, and that under that

state of case the law will imply a promise upon the part of Huffman to pay for Joe's necessaries.

The general rule as to the liability of the parent for necessaries furnished his children is stated as follows in 29 Cyc., p. 1608:

"It is a necessary consequence of the duty to support the child that the parent may in a proper case be held liable for necessaries furnished to the child by a third person; but in order to hold the parent liable there must be either an express promise to pay or circumstances from which a promise can be implied, some clear and palpable omission of duty on the part of the parent in not furnishing necessaries to the child, or some special exigency rendering the interference of such person reasonable and proper.

"The mere fact that a child is living away from home with the consent of the parent does not relieve the latter from liability for necessaries furnished to the child, and the parent is liable where his misconduct or abuse has driven the child to leave home."

And the same work, in treating of implied contracts and ratification in such cases further states:

"It has been held that a promise to pay for necessaries furnished to a child may be implied from the parent's duty to support the child, and the knowledge of the parent that another person is boarding the child with the expectation of being paid therefor imports an obligation to pay. So where a person supports a child at the parent's request a promise to pay therefor will be implied, unless there was an understanding that the child shall be taken care of without charge" (p. 1610).

In Hamilton v. Preston, 166 Ky. 63, the first and last of the above excerpts from Cyc. were quoted with approval, the court saying:

"Although it does not here appear that there was an express promise on the part of the decedent to compensate the appellee, Della Preston, for supporting his infant children, the circumstances shown clearly establish such a promise by implication. The evidence, as a whole, manifests that his failure to provide his children, with the necessaries required for their support, amounted to a palpable omission of duty on his part, and placed the burden of their maintenance upon their elder sister; and in knowingly permitting her to assume this burden and failing to advise her that he would not compensate her for the expenditures of money she thereby incurred, he

made himself liable to her for such expenditures; which liability, by reason of his death, was cast upon the estate left by him. We are, therefore, of opinion that in adjudging such liability a charge upon the decedent's estate and in fixing the amount thereof, as was done, the circuit court did not err.''

In Lufkin v. Harvey (Minn.) L. R. A. 1916B, 1112, the court said:

''In general, parents are bound to supply a minor child with the necessaries of life. They may be held liable to pay for necessaries furnished by a third person to a minor child without their contract or consent where there is an omission of duty on their part to furnish necessaries, as where the need exists and the parents refuse or neglect to act (29 Cyc. 1609-6, 7; Brown v. Deloach, 28 Ga. 486; Farmington v. Jones, 36 N. H. 271; Tomkins v. Tomkins, 11 N. J. Eq. 512; Clinton v. Rowland, 24 Barb. 634); or in case of some special exigency rendering the interference of the third person reasonable and proper, as in case of illness at a distance from the parental home (Keaton v. Davis, 18 Ga. 457; Porter v. Powell, 79 Iowa, 151 L. R. A. 176, 18 Am. St. Rep. 353, 44 N. W. 295.)''

See also to the same effect P. J. Huneycutt & Co. v. Thompson, 159 N. C. 29, 40 L. R. A. (N. S.) 488, and note, Ann. Cas. 1913E, 928.

We think Samuel Huffman's treatment of his family, including Joe, brings him within this salutary rule. He first married Anna on November 23, 1896; she divorced him on February 6, 1903; they were again married February 26, 1903; and, she again divorced him on May 7, 1904.

On June 16, 1890, Huffman was convicted of unlawfully disturbing a congregation and fined $25.00; on November 10, 1904, he was convicted of fornication and fined $20.00; on May 8, 1906, he was convicted and fined $100.00; and on May 19, he was fined $20.00 for gaming. Huffman had no estate, home, or regular employment, and mistreated his wife to such an extent that she was compelled to leave him. He practically abandoned Joe, leaving him wholly dependent upon others for his care and support.

The boy Joe was weak of body and mind and was only about seven years of age at the time of his mother's death; and, the order of the county court appointing J. H. Hatcher guardian recites that Samuel Huffman was not a proper person to be guardian of his infant son.

These circumstances presented a special exigency which made it necessary for some one to care for the child; and Hatcher having done so the law implied a promise upon the father's part to pay him therefor.

While this is not a suit to settle the accounts of John H. Hatcher as guardian, the reply asked that that be done and the parties attempted to do it. This having been asked by both parties the court will ignore the misjoinder. The record, however, contains no formal settlement; it merely gives a judgment for $3,000.00 to John H. Hatcher, not as guardian, but individually, based largely, however, upon his acts as guardian. There is no finding by the court or a commissioner showing what items were rejected or what were included in making up the amount adjudged; and, as the record contains more than 350 pages of proof and a large number of accounts and exhibits, the court should not be asked to act as a commissioner for the parties.

Upon the return of the case it will be referred to the commissioner to settle the accounts of Hatcher as guardian, charging him with rents and other receipts, the net receipts to be applied to the necessary support of his ward, and awarding him a judgment against the father for so much of the balance as is not barred by limitation.

The claim being asserted against the father upon an implied contract the plea of the five years statute of limitation will be applied.

Neither can we give our approval to so much of the judgment as granted a recovery to John H. Hatcher of $1,696.36 "from the estate of Anna Huffman," with a lien upon the land conveyed to Anna by her grandfather, since she had only a life estate, which terminated upon her death. The land belongs to others and cannot be treated as part of her estate.

This was not a suit to settle Anna Huffman's estate. No administrator of her estate had ever been appointed so far as this record shows. The claim was not asserted against her. If the cross-plaintiff Hatcher has an action against Samuel Huffman for the support of his wife during her life, he should assert, prepare, and collect it in the usual way.

What has been said of the condition of the record and practice to be followed in the collection of the claim for Joe's support, equally applies to this claim.

Judgment reversed upon the appeal, and affirmed upon the cross-appeal; and action remanded for further proceedings consistent with this opinion.