**POPE et al. v. KIRK.**

Court of Appeals of Kentucky.

Feb. 20, 1953.

M. J. See and Eldred E. Adams, Louisa, for appellants.

William R. McCoy, Jr., and Jasper Preece, Inez, for appellee.

DUNCAN, Justice.

The record here presents an unusual situation and is illustrative of the confusion which is compounded when uninformed laymen undertake the drafting of legal instruments.

On July 6, 1928, Alfred Yates executed, acknowledged, and delivered to his wife, Roda Yates, a deed conveying to her in fee simple thirty-five acres of land situated on Rockcastle Creek in Martin and Lawrence Counties. The deed was prepared and written in pen and ink by T. J. Endicott, a notary public. A few days after the deed was delivered, the grantee concluded that she wanted the property to descend to her grandchildren after her death, and she sent for and consulted the original draftsman. He, obligingly, insert-

ed in the granting clause by a pencil notation, which is apparent upon examination of the deed, the words "and her grandchildren at second party's death." There is no evidence that the grantor either re-executed the instrument or assented to the alteration. As altered, the deed conveyed a life estate to Roda Yates, with the remainder to her grandchildren. Alfred Yates died on August 6, 1928, and the deed was recorded in the proper office on August 14 of the same year. On February 14, 1931, Roda Yates conveyed to her granddaughter, the appellant, Florence Pope, a tract of fifteen acres within the larger boundary described in the earlier deed. The Florence Pope deed was not recorded until January, 1943, approximately twelve years following its execution, and two years subsequent to the death of Roda Yates.

At her death in 1941, Roda Yates was survived by three grandchildren, including the appellant, Florence Pope, and two great-grandchildren, who were the children of a deceased grandchild. The appellee, Andy Kirk, purchased the interests of the great-grandchildren and grandchildren, other than Florence Pope, taking from each deeds to the entire thirty-five acre boundary. Two of these deeds were procured in 1941 before the recording of the Pope deed, but the deed conveying the interest of the deceased grandchild was not executed until 1950.

By an action commenced in the Martin County Court, Kirk sought a partition of the entire boundary. Florence Pope answered, claiming title to the fifteen acres, and the action was transferred to the circuit court for trial of that issue. The circuit court adjudged Kirk to be the owner of a three-fourths interest in the fifteen acres, as well as the remaining twenty acres about which there is no dispute, and directed a partition of the entire boundary. Upon this appeal, Florence Pope and her husband insist that we must give effect to the conveyance to Roda Yates without regard to the alteration, while Kirk contends that his title must be determined by the instrument in its altered form. The question is not quite so simple as the contentions of the parties would indicate.

There can be no doubt that the alteration here, since it changes the quantity of the estate which is granted, must be considered as material. Generally, in considering their effect upon the instrument involved, material alterations are divided into three classes: (1) alteration by mutual consent of the parties; (2) alteration by a third person not a party to the instrument; and (3) alteration by the holder without the consent of the other party. In the first class, the instrument is given effect in its altered form as between the consenting parties. Huffman v. Hatcher, 178 Ky. 8, 198 S.W. 236, L.R.A.1918B, 484; Hunt v. Nance, 122 Ky. 274, 92 S.W. 6. In the second class, the alteration does not affect the validity of the instrument or change the rights of the parties as they existed prior to the alteration. Estep v. Owens, 209 Ky. 603, 273 S.W. 455; Phillips v. Board of Education of Pineville, 283 Ky. 173, 140 S.W.2d 819. In the third class, in which the deed involved here must be included, the alteration is usually regarded as vitiating the instrument. That rule is compelled by statute in the case of negotiable instruments and is applied by courts with respect to most other instruments without statutory direction. In the case of Hall v. Cannoy, 187 Ky. 718, 220 S.W. 737, 738, an alteration in an oil and gas lease by which the name of an additional lessee was inserted was treated as invalidating the lease. The Court there said:

"The interlineation or addition of Cannoy's name to the lease, without the knowledge or consent of the lessors and after they had signed it, destroyed its binding effect upon them. Any alteration in a written instrument by a party thereto which changes the legal effect of the instrument so as to affect its legal identity is a change of a material character, and will impair the instrument as against all who have not given their consent to the alteration. This rule is founded on the reason that it would be highly imprudent to allow one of the parties to make a material change in a written instrument without the other's permission; but when the alteration is made by a

stranger without the procurance of one of the parties, the reason for the rule ceasing, the rule itself ceases."

Although not cited, the Cannoy case was followed in the later case of Ft. Henry Oil Co. v. Rose, 199 Ky. 587, 251 S.W. 671, in which it was held that a material alteration would vitiate an oil and gas lease even as against a bona fide purchaser without notice.

██ There is no case in Kentucky involving the effect of an unauthorized alteration of a deed by the grantee. If we should consider a deed as being analogous to an oil and gas lease and adopt the rule which applies to that class of instruments, both parties to this appeal would fail insofar as their title is based upon the conveyance to Roda Yates. However, we think there is a reasonable basis for distinction between the two instruments which would render the rule announced in the Cannoy and Rose cases inapplicable. There is no immediate vesting of title in case of an oil and gas lease. Such an instrument merely confers on the lessee the right to reduce the minerals to possession, and title does not vest until possession of the minerals has been obtained. Therefore, the voiding of such a lease on account of an alteration, while destroying a right, does not divest the lessee of a vested title. On the other hand, title to land vests in the grantee upon delivery of the deed, and an application of the rule to that instrument would bring about a revesting in the grantor without observing any of the formalities of a conveyance.

██ The courts of this and other States have frequently written that a grantee cannot reinvest the grantor with title by destruction of the instrument or its redelivery even when accompanied by that intention. We, therefore, conclude that the deed to Roda Yates was not vitiated by the alteration and we must consider the deed in its original form.

██ Although not giving effect to the alteration, we think, nevertheless, a clear case of equitable estoppel is presented as to the interests purchased by Kirk prior to the recording of the Florence Pope deed.

Equitable estoppel results from conduct which precludes assertion of rights as against a person who has changed his position in reliance thereon. Haggard v. Green, 224 Ky. 441, 6 S.W.2d 487. Roda Yates was responsible for the alteration and the recording of the deed in its altered form. In reliance on the altered deed, and without notice that Florence Pope was claiming to be the owner of the entire title in the fifteen acres, Kirk purchased the interests of two of the grandchildren. These facts create an equitable estoppel against Roda Yates, which extends to her grantee, Florence Pope, and precludes her from denying the title of Kirk to the interests purchased by him prior to the recording of the Pope deed. The estoppel, however, does not extend to the deed procured by appellee after the recording of the Pope deed.

The judgment, therefore, is reversed, with directions to enter a judgment declaring appellant, Florence Pope, and the appellee, Andy Kirk, to be the owners of an undivided one-half interest each in the fifteen-acre tract.