Elbert v. McClelland, &c.

CASE 28—PETITION ORDINARY—FEBRUARY 20.

# Elbert v. McClelland, &c.

### APPEAL FROM WOODFORD CIRCUIT COURT.

1. ALTERATION OR MUTILATION OF A NOTE—BURDEN OF PROOF.—If an alteration or mutilation is made in or of a note by which the legal or equitable rights of the parties are affected, and the alteration or mutilation is caused by the act of the holder, and was intentional on his part, it invalidates the paper.

   When the fact of the alteration or mutilation is established, and the proof does not disclose how, by whom, or when it was done, the holder must suffer, as the burden of proof is upon the party in the possession of the paper and attempting to enforce its payment to show how the alteration or mutilation occurred, and upon his failure to do so no recovery can be had upon it.

   The name of one of the obligors to the note in this case was torn off. The obligee should never have received such paper without having some evidence of the cause of its mutilation.

2. If the alteration is material, the burden of proof is still upon the holder to explain it, although the alteration may be against his interest.

3. As the question is *mutilation or no mutilation*, the fact of the mutilation being against the interest of the holder would be a circumstance to be considered by the jury as to whether a mutilation had been made or not.

   But when the fact of mutilation is established, affecting the rights of the party charged, the explanation as to when and how it was done is with the holder. (2 Parsons on Notes and Bills, 579.)

4. ON A PLEA OF PAYMENT, proof of the payment of money, evidenced by checks after the date of the note sued on, and also a letter written by the plaintiff to the defendant asking for a loan of money, were competent for the defendant, but were improperly excluded from the jury by the lower court in this case.

   *The relation the parties occupied toward each other*, their pecuniary condition, as well as evidences of transactions between them, showing the payment of moneys after the execution of the note, should have been permitted to go to the jury upon the plea of payment; and the weight to be attached to such proof is with the jury.

VOL. VIII.—38

·JOHNSON & BROWN, . .⎫
PORTER & WALLACE, ⎭ . . . . . . For Appellant,

CITED

1 Gal. C. C. Reports, 69, Cutts v. United States.

4 Term Reports, 320, Masters v. Miller.

2 Mason's C. C. Reports, 478, United States v. Spalding.

8 Cowen, 71, Lewis v. Payne.

3 Bibb, 388, Fowler v. Halburt.

· 5 Monroe, 31, Bank of Limestone v. Penick.

3 Phillips's Evidence (ed. 1859), page 154.

11 Co. Reports, 27, Pigott's case.

BRECKINRIDGE & BUCKNER, . . . . . For Appellees,

CITED

8 Georgia, 248, Broughton v. Vest.

1 Phillips on Evidence, side-page 604.

5 Har. & John. 41, Wickes v. Caulk.

4 Green, 212, Harlan v. Berry.

| | |
|---|---|
| 3 Ohio, 445. | 4 Georgia, 95. |
| 6 Indiana, 152. | 2 E. D. Smith, 1. |
| 2 New Jersey, 424. | 1 Halstead, 215. |
| 2 Johnson's Cases, 198, 200. | 9 Alabama, 513. |
| 4 Sneed (Tenn.) 55. | 9 Missouri, 696. |
| 22 Barb. (N. Y.) 647. | 13 Maine, 386. |
| 36 Mississippi, 455. | 17 Georgia, 588. |
| 34 Maine, 115. | 20 Vermont, 205. |
| 11 Connecticut. 531, Bailey v. Taylor. | |

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

On the 5th of February, in the year 1870, the appellees, McClelland and wife, filed their petition in ordinary, in the Woodford Circuit Court, against the appellant, Elbert, on the following note, viz.:

"Ten days after date I promise to pay Mrs. M. B. McClelland five hundred and eighty-nine dollars sixty-five cents for hogs.                                    POLLARD ELBERT,
     November 28, 1862.                         G. J."

The appellees filed an amended petition, "alleging that the note was executed by the appellant to Margaret B. McClelland

for hogs sold and delivered him, and that the note was handed to her by the appellant in its mutilated condition; that G. J. Garth was never known in the transaction; and that if his name was ever on said note it was placed there before it came into appellees' possession, and was torn off without their knowledge or privity by the appellant Elbert, or by his procurement."

The appellant, as a defense to the action, relied upon the plea of *non est factum,* and that of payment. He alleges that his own name and that of G. J. Garth were upon the note when delivered to the appellees; and after its delivery (Garth being as much liable for the note as the appellant) Garth's name was fraudulently or intentionally torn off the paper, and the name of the appellant alone left on it.

The note on which this recovery was sought bears evidence of its having been mutilated, but whether or not this alleged mutilation exists was for the jury alone to determine. The initial letters *G.* and *J.* are all that seem to be left of the name of one of the obligors, and that part of the paper on which the remaining part of the name is alleged to have been written has been torn off either intentionally or by accident, or it may have been done by the consent of the obligors.

If an alteration or mutilation is made in or of a note by which the legal or equitable rights of the parties are affected, and this alteration or mutilation is caused by the act of the holder, and was intentional on his part, it invalidates the paper; and when the fact of the alteration or mutilation is established, and the proof does not disclose how, by whom, or when it was done, the holder must suffer, as the burden of proof is upon the party in the possession of the paper and attempting to enforce its payment to show how the alteration or mutilation occurred, and upon his failure to do so no recovery can be had upon it.

Phillips on Evidence, Cowen & Hill's notes, part 2, page

1318 : " When a bond has been altered since its delivery, and in a material part, the onus is upon the obligee to show that it was done legally; the presumption in such cases usually is that the alteration was made by the obligee or with his assent."

The appearance of the note in this case, the original having been filed with the record, was sufficiently suspicious to make even the most careless cautious in receiving such paper, and should have at least induced the party to whom it was delivered to have made inquiry as to the cause of its mutilated condition. The name of one of the obligors seems to have been almost entirely torn off, and the appellee should never have received such paper without having some evidence of the cause of its mutilation.

In Byles on Bills, page 393, it is said: " That the burden of explaining an alteration imposes no hardship on the plaintiff, for if the bill was altered in his hands he may and ought to account for it; if before, then he took it with a mark of suspicion on its face, which ought to have induced him either to refuse it or to require evidence of the circumstances under which the alteration was made."

In the case of Simpson v. Stackhouse (9 Barr, 186), Supreme Court of Pennsylvania, the court says: " He who takes a blemished bill or note takes it with its imperfections on its head. He becomes sponsor for them, and though he may act honestly he acts negligently. It is his fault to take such a note, and the law presumes that he had not only satisfied himself of the innocence of the transaction, but had provided himself with the proof of it, to meet a scrutiny he had the right to expect."

Parsons on Notes and Bills (volume 2, page 575) says: " Upon which party does the onus of explanation rest where an altered note or bill is made the foundation of the action? On general grounds, it is reasonable to say that the holder of the note is the one *prima facie* at least upon whom this respon-

sibility rests, and this rule is sustained by high authority as well as by strong reasons. Such is the view, in the main, of all the English cases; and the later English decisions, regarding the rule as settled, have thrown the onus upon the holder solely upon common law grounds."

This same author, on page 576, lays down this rule: "That if the alteration be manifest, or if the defendant can show that there is an alteration, he may stop then, and the onus is on the plaintiff to show that the alteration was made under such circumstances, in regard to time or person or purpose or justification, as would prevent it affecting his rights. The plaintiff is bound to account for the alteration if called upon to do so by the issue raised."

In Wells v. Harris (11 New Hampshire, 395), in case of a note, it was held: "That the question as to the time when the alteration was made is for the jury, who in some cases may be satisfied from the appearance of the paper itself that the alteration was made before execution; but in the absence of all evidence, either extrinsic or on the face of the note, as to the time of the alteration, it will be presumed to have been made subsequently to the execution and delivery of the note; otherwise the maker of the note must take evidence of the appearance of the note when it is delivered, in order to protect himself against alterations subsequently made without his privity. (See Walters v. Short, 5 Gilman, 252, 258; 1 Smith's Leading Cases, 963)."

There is a conflict in the American authorities upon the question presented; but the reason as well as the weight of authority is in favor of the principle as herein established. The necessity for such a rule of law is clearly shown in the present controversy.

It is apparent from an inspection of the note that the name of one of the obligors has been torn off, and the party taking such paper ought to have known, and in fact must have

discovered, its suspicious appearance if the mutilation then existed. If the holder of a note with such a mutilated appearance can require the maker to account for the alteration or mutilation, the mischief resulting from such a rule would be incalculable, and the perpetration of fraud made easy for designing men. If the alteration is material, the burden of proof is still upon the holder to explain it, although the alteration may be against his interest.

As the question is mutilation or no mutilation, the fact of the mutilation being against the interest of the holder would be a circumstance to be considered by the jury as to whether a mutilation had been made or not. But when the fact of mutilation is established, affecting the rights of the party charged, the explanation as to when and how it was done is with the holder. (2 Parsons on Notes and Bills, page 579.) In this case the effect of the alleged mutilation is to release one of the obligors and to make the appellant responsible for the whole debt.

The fourth instruction given for the appellees should have been refused. This instruction is not applicable to the facts proven; and if it can be made to apply at all, its effect is to place the burden of proof upon the appellant to explain by a preponderance of testimony the manner in which the alleged mutilation occurred. The third and sixth instructions asked for by appellees' counsel were properly refused. Instructions three, four, and five, asked for by appellant's counsel, should all have been given, as they embody the law of the case upon the facts presented.

The note in contest was executed in the year 1862, and this suit was instituted in February, 1870.

The appellant, with a view of sustaining his plea of payment, produced and offered to prove business transactions in writing between himself and J. T. McClelland, from 1862 up to 1870, in which appellant paid to the latter several thousand

dollars in money. He also offered to read a letter from McClelland to him, asking for a loan of money; but the court refused to permit either the payments of moneys, evidenced by checks after the date of the note, or the letter to be read to the jury. We perceive no reason why these numerous payments in checks, as well as the letter, should have been excluded as testimony. The relations the parties occupied toward each other, their pecuniary condition, as well as the evidences of transactions between them showing the payment of moneys after the execution of the note, should have been permitted to go to the jury upon the plea of payment, and the weight to be attached to such proof is with them.

For the reasons indicated the judgment of the court below is reversed, and the cause remanded with directions to grant to the appellant a new trial, and for further proceedings consistent with this opinion.