## Hall, et al. v. Cannoy.

(Decided April 23, 1920.)

### Appeal from Menefee Circuit Court.

1. Alteration of Instruments—Effect Upon Rights of Parties.—Any alteration in a written instrument by a party thereto which changes the legal effect of the instrument so as to affect its legal identity, will impair the instrument against all not consenting thereto.

2. Alteration of Instruments—Material Alteration.—An alteration may be material, though beneficial and void of any injurious effects, but the question is whether the contract in its altered condition is the contract into which the parties entered. That is material which may become material.

CLAY & HOGGE, W. C. HAMILTON, S. N. WILLIAMS, and JESSE J. WOOTEN for appellants.

W. B. WHITE for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

In April, 1918, the appellant, Kash, and appellee, Cannoy undertook to secure some oil and gas leases in Menefee county. They secured several leases, including one from H. C. and Nancy Jones, dated April 13, 1918; with the exception of the last named the leases were taken in the joint names of the parties. This controversy is over the Jones lease. Cannoy can neither read nor write. According to his testimony the lease was written by Kash in the Jones home, and after it had been thus written it was read over to the lessors and they signed it. He says that both his name and that of Kash were inserted in the lease as lessees.

Appellant Kash testifies that before they entered the Jones house Cannoy, in substance, said that Kash had better not mention his name in taking that lease. This is explained later by the fact that Cannoy was instrumental some twenty odd years before in having Mrs. Jones indicted; following Cannoy's instructions his name was not mentioned and Kash only was named as lessee; after leaving the Jones' house Cannoy said he wanted to be in the lease and Kash thereupon inserted Cannoy's name as lessee. Kash gave the several leases to a deputy clerk to have them acknowledged. They were later returned duly executed with the exception of the lease from Jones and wife, they having declined to acknowledge it. Two later attempts to get them to do so failed. Thereafter, to-wit, on May 27, 1918, Jones and wife at the instance of Kash executed to appellant, Hall, a lease on the same property covered by the earlier lease.

Jones and his wife corroborate Kash and say that they did not know or recognize Cannoy as a lessee and had his name been in the lease they would not have signed it, and this was the reason they refused to acknowledge it when it was later presented to them by the clerk.

At the time of the execution of the first lease the consideration of $7.50 was paid, of which sum Cannoy contributed $1.00. The two parties later adjusted the advancement by them for the several leases.

Several points are discussed in the briefs, but a decision as to the effect of the insertion of Cannoy's name in the lease after it was signed by the parties, if it was so inserted, being conclusive of the issues raised we

deem it unnecessary to discuss the others. The weight of the evidence convinces us that Cannoy's name was not in the lease at the time it was signed by Jones and wife. Not only is this testified to by Mrs. Jones and Kash, but the refusal of the lessors to acknowledge the deed is very persuasive of this fact, especially so when we consider the reasons given by Mrs. Jones for her refusal to have anything to do with Cannoy. Unfortunately the deputy sent to secure the acknowledgment of the lessors was not introduced by either party.

The interlineation or addition of Cannoy's name to the lease, without the knowledge or consent of the lessors and after they had signed it, destroyed its binding effect upon them. Any alteration in a written instrument by a party thereto, which changes the legal effect of the instrument so as to affect its legal identity, is a change of a material character, and will impair the instrument as against all who have not given their consent to the alteration. This rule is founded on the reason that it would be highly imprudent to allow one of the parties to make a material change in a written instrument without the other's permission; but when the alteration is made by a stranger without the procurance of one of the parties, the reason for the rule ceasing, the rule itself ceases. Devlin on Real Estate, sec. 461.

In Sheppard's Touchstone, p. 68, the rule on this subject is thus stated:

"If a deed that is well and sufficiently made in its creation, shall be afterwards altered by erasure, interlining, addition, drawing a line through the words (though they be still legible), or by writing new letters upon the old, in any material place or part of it as if it be in a deed or grant, in the name of the grantor, grantee, or in the thing granted, or in the limitation of the estate, or if it be in an obligation, when the word (heirs) shall be inserted, or the sum increased, or in the date of either or the like; be the same either by the party himself that hath the property of the deed, or any other whomsoever, except it be by him that is bound by the deed, and be the same with or without the consent of him to whom it is made or doth belong, in this case, and by either of those means, the deed hath lost its force and is become void."

See also Pigot's case, 11 Coke 47.

The rule seems to still obtain in England that the alteration by either a party, the holder or a stranger, invalidates the instrument. But as to the effect of an alteration by a stranger the rule in this state has been changed. Lee v. Alexander, etc., 9 B. Mon. 25.

An alteration may be material though beneficial and void of any injurious effects. The question is whether the contract in its altered condition is the contract into which the parties entered. That is material which might become material. Courts can not undertake to say the lessors would have made the deed as altered and then alter it for them merely because the terms might be more favorable to them than those in the original instrument any more than they would be justified in a like conclusion when the alteration imports additional liability. In the one case no less than the other the altered paper is not the contract which the party has made, and in neither case can the courts declare it to be his contract or enforce it as such. The law proceeds upon the idea that the identity of the contract has been destroyed, that the contract made is not the contract before the court. 1 R. C. L. 968, 9.

A very good statement of the rule is found in Schintz v. McManamy, 33 Wis. 299, where a person's name was inserted in a deed as grantee contrary to the wishes of the grantor. The court recognizes the rule enunciated by this court in Root v. Townsend, 186 Ky. 56, 215 S. W. 936, to the effect that a grantee may insert his name in a deed, provided he has authority from the grantor so to do. But in the Schintz case, as in the case now before us, the name of the grantee was inserted in the instrument not only not as authorized by grantor, but contrary to his express instructions and desire. In the course of its opinion the court says:

"It may be said that it is quite immaterial to the plaintiff whether he conveys the lot to the defendant or to his sister, so long as he received the agreed price therefor. This may be true, and yet the plaintiff has an undoubted right to determine for himself to whom he will convey his land. He may be willing to convey to one person for a given price, but his right to refuse to convey to another person for the same price is undoubted. He may contract to convey to A, and yet be under no legal obligation to convey to B, on the same terms, even though A may desire that he do so."

To the same effect see Cotton v. Edwards, 6 Dana 106; Bank of Limestone v. Penick, 5 T. B. Mon. 25; Shipp's Admr. v. Suggett's Admr., 9 B. Mon. 5; Lisle v. Rogers, 18 B. Mon. 528; Locknane v. Emmerson, 11 Bush 69; Blakey v. Johnson, 13 Bush 197, and Mitchell v. Reid's Exr., 32 Rep. 683, 106 S. W. 683.

We know of no rule or principle of law, and have been shown no authority which makes a lease valid and operative to convey the title to a stranger whose name has been inserted therein by the holder of the lease without authority from the lessor, and contrary to his express wishes. It follows, therefore, that the lessors were within their rights when they executed the lease to Hall, and the latter being a valid instrument, said lessee can proceed to the exercise of the rights therein granted.

If, as appears from the record, the appellant Hall has given to appellant Kash an undivided interest in or to the leasehold rights that matter can be adjusted by the lower court, which court can likewise adjust and settle any interest or claim that Cannoy may have as against Kash growing out of any agreement or partnership covering leases taken by them.

Wherefore the judgment of the lower court is reversed for further proceedings consistent herewith.