Allen, J.
 

 The Court of Appeals found as a fact that:
 

 
 *277
 
 “At some time between May 24, 1922, and July 10, 1926, while said lease was in the hands of the plaintiff or its predecessor in title, Jambs A. Deeds or his legal representatives, the name of A. M. Baxter was fraudulently written on said instrument as an attesting witness by someone other than A. M. Baxter himself, the name A. M. Baxter, as such attesting witness appearing in different colored ink and a color never used by the said Baxter.”
 

 In other words, the Court of Appeals found that there had been a material and fraudulent alteration of the lease from Turner to the predecessor of the Pure Oil Company, prior to the acts of claimed possession on the part of the Pure Oil Company. Under this finding of fact, the Court of Appeals then held that the lease was void, proceeding under the well-established rule that a material alteration by the lessee terminates his estate. 16 Ruling Case Law, p. 569, Section 44;
 
 Bryan
 
 v.
 
 Carter,
 
 169 Ala., 515, 51 So., 999;
 
 Hall
 
 v.
 
 Cannoy,
 
 187 Ky., 718, 220 S. W., 737;
 
 Dreyfuss
 
 v.
 
 Process Oil & Fuel Co.,
 
 142 La., 564, 77 So., 283;
 
 Ft. Henry Oil Co.
 
 v.
 
 Rose,
 
 199 Ky., 587, 251 S. W., 671.
 

 However, there is no testimony whatever in the record that this fraudulent insertion of Baxter’s name, so found, occurred while the lease was in the hands of the plaintiff. The only testimony in the record upon that point is to be found in that given by Edward F. Claggett, manager of the producing properties in Ohio of the Pure Oil Company, and in charge of the leases in Guernsey county, through whom the lease came into the Pure Oil Company’s possession. Claggett testified that the lease, at the time of trial, was exactly in the same condition as
 
 *278
 
 when he received it. This testimony is uncontradicted. Furthermore, the record contains no evidence that anyone other than Baxter wrote Baxter’s name as witness on the lease.
 

 It clearly appears from the record that the lease was recorded in 1922, with the name of but one witness thereon; namely, Dallas Newman. This is shown on the record of G-uernsey county, and by the testimony of the recorder for that period, and his assistant, Miss Quinn. However, the lease as offered in evidence bore a second witness’ signature; namely, that of A. M. Baxter, the notary whose name appeared upon the acknowledgment. At the trial Baxter, when asked whether the signature of the second witness was his, answered, “That’s very like —I would say that was my signature.”
 

 The circumstance that Baxter’s signature as witness was written in different ink from that which appears in the acknowledgment, and that Baxter thought that he had not used any other kind of ink than that used for his signature as notary, is of trifling moment indeed, in view of the various possibilities of using different inks in different person’s fountain pens, and particularly of trifling moment when we take it in connection with Baxter’s own statement, after careful examination of the signature, that he would say that was his signature.
 

 This is the only testimony in the record with regard to who wrote the name of Baxter on the lease in the place reserved for witnesses, and this uncontradicted testimony establishes the fact that the signature was not forged. The uncontradicted testimony of Claggett established that the Pure Oil Com
 
 *279
 
 pany did not place the second signature upon the lease.
 

 The fact that Baxter’s signature as witness is written in the place for witnesses is, in itself, evidence that he actually witnessed the signing. It is true that Fred Turner says that Baxter was not there; hut his interest, and the interest of Dallas Newman, who was then his clerk, is evident. It is highly significant that Mrs. Turner was never called to the stand.
 

 Baxter says that he took the acknowledgments of the signatures on the lease, and his notary’s certificate requires clear and convincing evidence to impeach it.
 
 Logan Gas Co.
 
 v.
 
 Keith,
 
 117 Ohio St., 206, 158 N. E., 184. In this connection, while Turner denies that he ever acknowledged the signature, the failure of Mrs. Turner to take the stand is again of the utmost importance, and we hold that the acknowledgment is not impeached by the sufficient degree of evidence.
 

 At most, then, this lease is defective, but not forged, and, if defective, its effect can be validated, and its defects cured, by acts of actual and open possession upon the part of the Pure Oil Company.
 
 Langmede
 
 v.
 
 Weaver,
 
 65 Ohio St., 17, 60 N. E., 992;
 
 McKinzie
 
 v.
 
 Perrill,
 
 15 Ohio St., 162;
 
 Day
 
 v.
 
 Atlantic & G. W. Rd. Co.,
 
 41 Ohio St., 392.
 

 It appears from the uncontradicted testimony that the' Ohio Fuel Supply Company, the agent of the plaintiff in error, on June 21, 1926, prior to the execution of the lease by Fred Turner to Milton H. Turner, acting under the defective lease theretofore executed, located a well upon the property described in the lease and placed a stake at the point where
 
 *280
 
 the well was located. Afterwards, on June 24, the location of this well was slightly changed. Upon June 23, five loads of rigging material were placed on the premises near this stake, by the supply company. On June 24 the company delivered four loads to the safne premises; on June 30 two loads were delivered, and on July 6, after the execution of tíhe lease from Fred Turner to Milton H. Turner, the company proceeded to erect a rigging, which was completed on the 12th, and thereafter used for drilling until a gas well was struck. It is conceded by the defendant in error that these acts were done at the times above set forth, but he maintains, and the majority of the Court of Appeals held, that this possession availed nothing to the' plaintiff, because it was a possession of which,the immediate neighbors did not know, taking place in a secluded spot in a thicket; in other words, that it was not actual and open.
 

 Does possession, to be “actual and open,” have to consist of acts done in the view of any casual passerby? If so, to establish possession, it might be necessary to cut down trees and to level hills in broken ground of the state.
 

 There is no question but that the material was placed in a suitable location for the drilling of the well. Not only was the material placed upon the ground in question, but, prior to the execution of the lease by Fred Turner to Milton H. Turner, brush was cut and the ground was actually cleared for the drilling of the well. The only testimony which in any way tends to contradict this is that one farmer, called on behalf of the defendant, claims that he walked upon this 158-acre tract and did not
 
 *281
 
 see the material. He says he could have seen it if it had not been for trees or small brush.
 

 No cases are cited to us by the defendant in error exactly in point upon these particular facts. No case is cited which holds specifically that a lessee under'a defective lease, who has actual possession, and possession which is not concealed, but open, so that any one upon that ground, in such a place where he could see it, has the opportunity to observe the physical acts which constitute the acts of possession, cannot avail himself of the rule as to actual and open possession, because as a matter of fact some man wandering upon the tract of land, and perhaps not in the exact spot, says that he did not see these particular acts and physical conditions.
 

 We think that where possession is actual and open upon the part of the lessee, it is actual and open even if the person who contests the possession happens to be in California, so he cannot see it, or happens to be on the other side of a wooded tract, so that he does not see it. There is no testimony in the record whatever of concealment, the doing of the acts is admitted, and therefore we hold that actual and open possession was established in this case. The acts of possession need not extend to the entire tract leased, in order to charge the purchaser with notice of the adverse claim, such acts as to part being regarded as sufficient to raise the duty of inquiry as to the extent and source of the possessor’s rights. 2 Tiffany on Real Property (2d Ed.), Section 571;
 
 Hunt
 
 v.
 
 Taylor,
 
 22 Vt., 556;
 
 Bowles
 
 v.
 
 Brice,
 
 66 Tex., 724, 2 S. W., 729;
 
 Boyer
 
 v.
 
 Chandler,
 
 160 Ill., 394, 43 N. E., 803, 32 L. R. A., 113;
 
 *282
 

 Garbutt
 
 v.
 
 Mayo,
 
 128 Ga., 269, 57 S. E., 495, 13 L. R. A. (N. S.), 58, and note, p. 84.
 

 We think that these conclusions are determinative of the issues in this case, and that the judgment of the Court of Appeals must be reversed, and judgment rendered for the plaintiff in error.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Dáy, Kinkade, Robinson, Jones and Matthias, JJ., concur.