# Phillips et al. v. Board of Education of Pineville.

March 5, 1940.

H. Clay Kauffman, Special Judge.

174

Cleon Calvert for appellants.

H. L. Bryant for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The Board of Education of Pineville sued J. L. Phillips, B. O. Howard, Ray B. Moss, N. R. Patterson, J. S. Helton and H. H. Asher as sureties on a bond of the Bell National Bank as depository of school funds held when it closed as insolvent on January 12, 1932. Judgment was prayed for $14,400.35, but dividends from the assets of the bank during pendency of the action reduced the amount, and judgment for $3,914.34 and interest was rendered against the defendants, except Patterson, who had died. The defense was and is non est factum because the bond which the defendants had signed was a treasurer's bond and it had been altered after execution to make it a depository bond.

Miss Coe E. Shaffer, secretary and treasurer of the Board of Education, testified that she had forwarded to the State Department of Education at Frankfort her fidelity bond as treasurer and a depository bond of the First National Bank of Pineville, and requested that forms be sent her for execution by the Bell National Bank, which also held school funds. Instead forms for a treasurer's bond were sent. All of these forms were mimeographed. She scratched through the word "treasurer" in the caption and at the end of the address of the bank wrote "depository" over it in ink. In that condition she delivered the forms to the cashier of the bank to be filled in and executed in triplicate. After a few days they were returned to her duly executed and she forwarded one copy to the State Department on September 27, 1930, and retained two copies. When the forms were returned changes had been made on a typewriter by someone unknown to her. The State Department acknowledged receipt and advised that the State Board of Education had approved the bond on October 7, 1930. We copy the bond with the original words in parentheses and the changes and insertions italicized:

"Commonwealth of Kentucky
"Public School Funds
"Bond of (Treasurer) *Deposiitory*
"Of the City Board of Education

| Received |
| Sept. 29, 1930 |
| State Department |
| of Education. |

"We, the undersigned, do hereby acknowledge ourselves jointly and severally indebted to the Commonwealth of Kentucky, in the penal sum of Twenty Thousand Dollars ($20,000.00), that The Bell National Bank, Pineville, Kentucky, as (Treasurer) *Depository* of the City Board of Education shall well and truly discharge the duties of said office according to law, account for, to the proper authorities, and pay over to all parties legally entitled thereto on the proper warrants any and all funds that may come into his hands as Treasurer of the Board of Education aforesaid, for a two-year term beginning July 1, 1930, or until his successor is duly elected and qualified.

"Witness our hands this 27th day of September, 1930.

"Bell National Bank,
"By **B. O.** Howard, Cashier (Treasurer) *Depository*

| "J. L. Phillips, | *Personal Surety* |
| "B. O. Howard, | *Personal Surety* |
| "Ray B. Moss, | *Personal Surety* |
| "N. R. Patterson, | *Personal Surety* |
| "J. S. Helton, | *Personal Surety* |
| "H. H. Asher, | *Personal Surety* |

"Approved Sept. 27, 1930. By the Pineville, Ky., Board of Education,

J. S. Chappell, Chairman.

Coe E. Shaffer, Secretary.

Received. by the Superintendent of Public Instruction Sept. 22, 1930. Approved by the State Board of Education Oct. 7, 1930.

W. C. Bell, Chairman.

"We hereby certify to the Superintendent of Public Instruction that the bond set out above is a true copy of the bond executed by the Treasurer of this board of education.

"J. S. Chappell,
. Chairman;
Coe E. Shaffer,
Secretary.

"Subscribed and sworn to before me this Sept. 27, 1930.

"A. C. Strunk, Notary Public, Bell County, Ky.

"My commission expires Sept. 11, 1933."

On the reverse side are five statements by the respective sureties as to their financial worth. Each certificate originally referred to the signer as surety on the treasurer's bond of the City Board of Education, but the word "treasurer" has been erased and "depository" typed over it. The jurat of A. C. Strunk, notary public, to these oaths is dated on the typewriter "September 27, 1930." The oath of the chairman and secretary of the board is dated the same day but with pen and ink.

Each of the six defendants testified positively that he had signed a bond for a treasurer and nowhere in the instrument was there any indication that it was a depositor's bond. The words "personal surety" after the name of each was not there when he signed it. These men were directors of the bank and as they had stopped by the bank Howard, the cashier, or Strunk, an assistant cashier, had presented the paper and asked them to sign it. It appears that each did so without any of the others being present. Some of the defendants testified to having examined the paper carefully and others only casually. But everyone of them is sure that the bond was changed after he signed it.

There is considerable contradiction as to whether the word "depository" now appearing in ink is in the handwriting of Miss Shaffer. As we have stated, she testified that she made those changes before the form was turned over to the bank to be executed. J. S. Chappell, chairman of the Board of Education, testified in his deposition taken as on cross-examination in the beginning of the litigation that the writing looked to be different from Miss Shaffer's, but toward the end of the taking of proof he testified that it was in her handwriting. Several witnesses acquainted with her handwriting expressed the opinion that it was not hers. The original documents in triplicate have been brought to this court and a dissimilarity between her admitted writing and the words on the bond is noticeable. As to the changes made by typewriter and the filling of the blanks, some of the witnesses claimed an ability to discern a

difference and expressed the opinion that two or perhaps three different machines had been used. The only witness undertaking to explain or account for these typed changes is A. C. Strunk. He was at the time assistant cashier of the bank and a notary public. Since then he has been discharged, and his reputation was proved to be bad. Strunk deposed that there were three typewriters in the bank. He had ordinarily used one of them in his work and another was at or near the desk of G. C. May, the president of the bank, and used mainly by Miss Hammond for the cashier's correspondence. Strunk stated that the changes and insertions on the bond were all made on that machine, but he denies any knowledge as to who had used it or when the changes were made, except that they were on the bond when he procured the signatures of Chappell and Miss Shaffer and affixed his notarial seal. The testimony of neither May nor Miss Hammond was offered. Howard, the cashier and one of the defendants, testified he did not make the changes. He had signed the bond and had the other parties to do so simply because the School Board wanted it.

Another peculiar condition appears. The copy sent to and retained by the State Department of Education has an endorsement with pen and ink that it was received on September 22, 1930, and also a stamped imprint that it was received September 29th. The records of the State Department contained no correspondence or any explanation accounting for the difference in the two dates. It is appellants' conclusion and argument that the bond had been sent in by Miss Shaffer as a treasurer's bond on September 22nd, just after it had been executed, and that it was returned by the State Department because it was not a depositor's bond, and that Strunk had then proceeded to alter and change the instrument into that of a depository bond, possibly not realizing the difference or the significance of the change, or had assumed to be of service by avoiding the execution of another bond. Inasmuch as none of the sureties had signed at the same time, it is more probable, it seems to us, that Strunk made the changes when he inserted the date "September 27th," which appears typed in the phrase, "Witness our hands this 27th day of September, 1930," above the signatures, and in ink in his two jurats, as well as in ink, apparently in the handwriting of Miss Shaffer, showing the approval of the bond

by the chairman and herself. The date, "September 22nd," inserted in ink above the date of approval by the Superintendent of Public Instruction, October 7th, was probably a mistake, no special attention having been given to the stamped imprint showing September 29th as the date of receipt. The date shown by that stamped register of correspondence received is undoubtedly correct. Miss Shaffer's letter of transmission is dated September 27th, and there is no other correspondence. These dates are not of interest except as aiding to solve the problem of when and why changes in the bond were made; and, in turn, that is not material except in ascertaining whether the alterations were before or after execution.

With all the changes, it is to be noted that the terms of the obligation of the bond yet remained that the bank would discharge the duties of *treasurer* and not *depository,* and the certificate of the chairman and secretary is that the paper is a true copy of the "bond executed by the *treasurer* of this board." By reason of this, it may be doubtful that if all the changes should be regarded as having been made before it was signed the sureties could even then be held on a depositor's bond. The bank was never the treasurer and held no funds in that capacity. However, we may pass by that question and consider that pertaining to the alterations.

The ancient rule in England was that if the alteration was made by either party or the holder or a stranger it invalidated the instrument, but the modern doctrine is that the alteration or mutilation by a stranger without authority or participation of the party interested does not render it invalid nor change its legal operation as it was before. Lee v. Alexander, 48 Ky. 25, 9 B. Mon. 25, 48 Am. Dec. 412. However, if the alteration so transformed the obligation as to increase the liability of the obligors, and the obligee seeks to recover on the transformed instrument, in such a case he certainly may not recover, for the character of the instrument has been changed. It was never executed by the obligor, or, as in this case, by the sureties. Lee v. Alexander, supra; Hall v. Cannoy, 187 Ky. 718, 220 S. W. 737; 50 C. J. 128.

If a material alteration is made by one of the parties to an instrument without the authority or consent of

the other, the effect is to release a surety regardless of the question of increased liability. Phoenix Insurance Company v. McKernan, 100 Ky. 97, 37 S. W. 490. If Miss Shaffer, the secretary of the board of education, changed the word "treasurer" to "depository" after the execution of the bond by the sureties, it would have to be regarded as an alteration by a party—the obligee. If she made those changes before the bond was signed, as she says she did, there yet remains the fact that the typed changes were made by some stranger to the sureties, and the case is brought within the rule of vitiation first stated. If Strunk, or someone else connected with the bank, made the changes, he was a stranger to the sureties for they signed the bond as individuals and not in the capacity of directors of the bank. No matter who made them, with good intention or bad, it is clear that if it was after the instrument was signed by the sureties there is no liability on their part under the bond sued on for it was not the instrument they executed. There is a material difference in a depository's bond and the fidelity bond of a strictly public officer. The bond of a depository, though it be in general terms, imposes a greater responsibility than a bond conditioned upon the faithful performance of the duties of an officer. The former is a guaranty of the security of the funds and the assurance that they will be delivered on demand. 18 C. J. 588; Commonwealth for Use of Livingston Graded School v. First State Bank, 251 Ky. 95, 64 S. W. (2d) 485; Bennett v. County Board of Education of Harlan County, 273 Ky. 143, 116 S. W. (2d) 302. The latter, when couched in the language of the bond in this case as it was originally, was, in respect of the custody of funds, a guaranty of the personal honesty of the bank as an officer, furnishing indemnity against its defalcation or negligence. 46 C. J. 1070. The liability for loss of funds while in the custody of a strictly public officer is that of a bailee and not of an insurer. Edwards v. Logan County, 244 Ky. 296, 50 S. W. (2d) 83; Commonwealth v. Polk, 256 Ky. 100, 75 S. W. (2d) 761.

The plaintiff sought to recover on an instrument which shows on its face erasures and alterations so material as to change its nature altogether. The burden was upon the plaintiff claiming the benefit of such mutilated instrument to show by satisfactory evidence that the alterations were made before its execution by the

sureties, or, if subsequent, by their agreement, the defendants' plea being non est factum. Elbert v. McClelland, 71 Ky. 577, 8 Bush. 577; Hoskins v. Northern Lee Oil & Gas Company, 194 Ky. 628, 240 S. W. 377; Denny v. Darraugh, 212 Ky. 655, 279 S. W. 1069; Correll v. People's Bank, 223 Ky. 115, 3 S. W. (2d) 170. Were the paper not so suspicious and the plea different, the burden would have been on the defendants. Pike County v. Sowards, 147 Ky. 37, 143 S. W. 745; Dills v. Scroggin's Executrix, 251 Ky. 452, 65 S. W. (2d) 464.

As stated, the only evidence produced to show that any alteration in the form was made before the sureties signed the bond was as to the substitution of "depository" for "treasurer" in two places by Miss Shaffer. While Strunk testified what machine made the typed changes, he did not undertake to disclose who made them or when they were made, except that it was before the chairman and secretary of the board signed it. Over against this indefinite evidence is the positive and uncontradicted testimony of men held in high esteem in their own community, and some of them well known throughout the state, that they did not sign the depositor's bond and would not have done so. It is true they knew Miss Shaffer and not the bank was the treasurer of the City Board of Education, and it is strange they made no inquiry as to why they should be executing a bond of the bank as treasurer. Mr. Patterson stated that the bank was the treasurer of the County Board of Education and he was assuming that it was being named as treasurer of the city board. The other men simply signed the instrument because the cashier or assistant cashier presented it to them as being a paper necessary for the bank to have executed. This consideration may indicate carelessness or lack of concern, but it is not sufficient to overcome the testimony and all the circumstances showing the bond was altered and, therefore, not binding upon those who had signed a different character of obligation.

We are of opinion, therefore, that the judgment rendered by a special judge is erroneous and that the petition should have been dismissed.

The judgment is accordingly reversed.

Judge Cammack not sitting.