# Kelly et al. v. King.

Nov. 15, 1940.

J. S. Forester, Special Judge.

430

J. B. Wall for appellants.

C. B. Spicer for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellee, A. J. King, sued the appellants, Floyd H. Kelly and Mabel Kelly, his wife, together with B. F. Kelly, his uncle, and Marvin Kelly, his brother, to recover on a note for $1,000 allegedly executed by B. F. Kelly as principal and Floyd H. Kelly as surety on January 18, 1929, and to set aside certain transfers of property to Mabel Kelly and Marvin Kelly. The petition was filed on April 30, 1935, and contained the following allegations with respect to the note:

"Plaintiff says on January 18, 1939, the defendants, B. F. Kelly and Floyd H. Kelly, executed a renewal note signed by said two defendants and made payable to the plaintiff, A. J. King, payable twelve (12) months after date, by the terms of which the said defendant agreed to pay the plaintiff the sum of One Thousand ($1000.00) Dollars, with interest from January 18, 1929, until paid, said note being a renewal of said note executed by said defendants on January 18th, 1922, and in lieu thereof."

On October 15, 1935, the appellants, with the exception of B. F. Kelly who had died during the preceding August, moved the Court to require the plaintiff to file the note sued on, and on October 24th, the Court entered an order requiring the appellee to file a copy of the note and to exhibit the original to the appellants' attorney for inspection. The copy filed in obedience to this order read as follows:

"$1000.00 Evarts, Ky. Jan. 18, ~~1923~~
 1933
 1929

"Twelve months after date we or either of us promise to pay to the order of A. J. King one thousand dollars with six per cent interest at B. F. Kelly Lumber & Supply Co., Evarts, Ky. The drawers, endorsees and guarantors of this note hereby waive diligence in bringing suit against any par--

ty hereto, and sureties consent that the time of payment may be extended without notice thereof. The drawers, makers and sureties and endorsers of this note severally waive presentment for payment, protest and notice of protest and non-payment of same and guarantee payment on demand after date of maturity.

"B. F. Kelly

"Surety Floyd H. Kelly

"Renewed."

On October 30, 1935, the appellant, Floyd H. Kelly, who, for convenience, will hereafter be referred to as the "appellant", filed his separate answer in which he admitted that on January 18, 1922, he had signed as surety for B. F. Kelly a note for $1,000 payable to the appellee, King, but denied that he had signed a renewal of the note at any time. He further pleaded in separately numbered paragraphs that the note had been materially altered and that it was barred by the seven year Statute of Limitations. Kentucky Statutes, Section 2551.

It would serve no good purpose to describe the amendments or subsequent pleadings filed, or to notice the issues raised as to the validity of the transfers alleged to have been made by the appellant to his co-defendants, since the main questions in the case, and the only ones which we deem it necessary to discuss are whether the original date of the note was altered or mutilated by the appellant, or by his counsel, or with his consent, and the actual date of the note's execution.

It is conceded that the appellant was merely a surety and that his liability was barred by the Statute of Limitations if the note was executed on January 18, 1922. Thus the motive for the alteration of the date of the note is apparent, although a surety is released by a material alteration even though the alteration did not increase his liability. Phillips et al. v. Board of Education of Pineville, 283 Ky. 173, 140 S. W. (2d) 819. Since the original note brought to this Court as an exhibit unmistakably shows the alteration or, rather, mutilation of the original date, and the appellant and his attorney by their testimony disclaimed any knowledge of who had made the alteration, the burden of explaining or accounting for it, originally on the appellant, shifted to the appellee. Denny v. Darraugh, 212 Ky. 655, 279 S. W.

1069. This brings us to a discussion of the nature and character of the alteration and the proof offered by the respective parties.

The material alteration of the note to which we have referred does not consist of the writing of the numerals "1931" and "1933" above the original date, or the drawing of the line through the numerals "1931" as shown on the copy filed with the petition. These additions which appear above the original date year on the original note were made, according to appellee's testimony, by B. F. Kelly the principal debtor on the occasions when he paid interest, their purpose being to indicate the dates to which the interest had been paid. The material alteration to which we have referred consists of the almost total obliteration, by liquid or eraser, of the numerals originally inserted in the blank space in the printed year date "192—", and the attempt to make what appears to be a "9" to cover the original figure. The down stroke of the last inserted figure cut through the paper at the point of the attempted erasure with the result that the original figure is undecipherable.

After the note had been exhibited to appellant's counsel in October, 1935, it remained in the custody of appellee or his counsel until the appellants took the deposition of appellee as if under cross-examination in July, 1937, when it was produced and filed as an exhibit by appellee. Appellee's counsel testifies that shortly thereafter he procured the deposition from the official stenographer and placed the note with it. Apparently the deposition remained in the custody of appellee's attorney until it was called for and filed by the official stenographer on March 3, 1939. Appellant's counsel says that he did not see the note during this period until the summer or fall of 1938 when the appellee took the deposition of certain witnesses. Appellant's counsel further testified that when he saw the note in October, 1935, the date "1922" was discernable under a magnifying glass but that over the last "2" was written the figure "3", and over that was a figure which he thought was a "9". In this statement he is corroborated by the appellant, Floyd H. Kelly, who examined the note with his counsel. When the note was exhibited in 1938, it appeared to be in the same condition as when it was inspected in 1935. About March 15, 1939, appellant's counsel took the note from the deposition for examina-

tion and saw that "there had been, apparently, some strong erasures made on the note where it showed that the figure 2 in the original date had been erased and the 3 that was written over it had been erased and a 9 made over it and in erasing these figures it had practically worn through the paper and in making the stem to the 9 of the 1929 the stem goes through the paper."

Appellant's counsel thereafter retained possession of the note for use in taking the depositions of certain witnesses for the appellant. Appellee's counsel testified that at the time the note was filed with the deposition it bore the date "January 18, 1929", and was in good physical condition without any tears, or blurs. He did not examine the note again until he saw it in the office of appellant's counsel, apparently during the taking of the depositions, and he then observed that it was in the same condition as it was at the time it had been filed with appellee's deposition "with the exception that the figure '9' in the writing in the date 'January 18, 1929', had been tampered with, and appeared to have been dampened or wet with the view of causing the ink to run and destroying the visibility of the '9'." Witnesses for both parties testified in support of the statements of their respective counsel, but no one was able to throw any light on the question of when or by whom the note was altered. The only fact established by the testimony respecting the alteration of the date of the note was the admitted fact that it was mutilated after the institution of the suit so as to render it impossible to determine whether the date "1922" was discernable under a magnifying glass, or whether prior to 1939 the date of the note was clearly 1929.

Under the authorities heretofore referred to, we might with justification rest our conclusion that the Chancellor's decree granting the relief sought was erroneous upon the failure of the appellee to satisfactorily explain or account for the apparent and obviously material alteration of the note after the appellant had testified unequivocally that he had executed the note in January, 1922.

But it is not necessary to dwell further upon the legal effect of appellee's failure to satisfactorily explain or account for the alteration, since in our opinion the testimony conduces to show that the note was executed

on January 18, 1922. True, the testimony of the appellee and the appellant is directly in conflict as to the actual date of execution, but the latter's testimony is far more certain and definite and more strongly corroborated than the former's. As heretofore noted, the appellee testified that it was the custom of B. F. Kelly, the principal of the note, to mark over the date line the year to which the interest had been paid, thus accounting for the "1931" and "1933" which appear on the note. If similar notations were made over instead of above the original numerals, assuming them to have been "1922", this fact would account for the condition of the year date as it appeared under the magnifying glass when first inspected by the appellant and his counsel. If we assume this to have been the practice, it is readily conceivable that eventually it became desirable or necessary to insert the numerals indicating the year to which the interest was paid, above instead of on the original date line; but appellee testified that only four interest payments were made on the note, and that he remembers this because three of them were paid in lumber. It should be explained here that appellee had testified that he had originally loaned $2,000 to B. F. Kelly in 1922 on a note signed by B. F. Kelly and his son-in-law, John Adkins, as surety, and that $1,000 had been paid on this note on January 18, 1929, whereupon, B. F. Kelly had given him a new note for $1,000, the note sued on, which the appellant, Floyd H. Kelly, had signed as surety. As illustrative of the lack of certainty in appellee's testimony, it should be noted that while he stated that he based his recollection of the date of the note upon the fact that on three occasions he accepted lumber in payment of interest and that this lumber was used by a step-son, Grant Huff, in 1930, by another son-in-law, Ben Cloud, in 1931, and in covering a chicken house in 1932, he failed to produce either of the parties named, or any memoranda, or any record whatsoever to substantiate his testimony. Although at one point he testified that he had never procured lumber from B. F. Kelly, who was a lumber dealer, except on the three occasions referred to, it is apparent that he was referring merely to the occasions on which he had accepted lumber in payment of the interest, for, in another part of his deposition, he admitted that he had had many dealings with B. F. Kelly, and that he, appellee, "always bought lumber every year" from B. F. Kelly. It is true that

the appellee could neither read nor write, but, notwithstanding these handicaps, it would seem probable that he had in his possession some data that at least in a measure would have substantiated his testimony as to the date of the note signed by appellant. The only corroborative testimony of any kind introduced by appellee, aside from the testimony of the witnesses who expressed their opinion as to the date shown on the note at and after the institution of the suit, was that of Floyd Creech who said he saw the note executed by appellant "about 1929, the best I remember". However, the testimony of this witness impresses us as mere guess work on his part, as it contains nothing to indicate that the witness actually knew the year in which the note was signed.

The testimony introduced by appellant is far more convincing. Not only was he positive that he executed the note on January 18, 1922, because of his clear recollection of the whole transaction, but because at the time he signed the note as surety for B. F. Kelly, he himself desired to borrow money and B. F. Kelly agreed to sign and actually did sign as surety for appellant a note to one Mose Brewer for $2,210 dated February 23, 1922. This note had been paid and was produced and exhibited by the appellant, although apparently not filed as an exhibit. Moreover, appellant introduced as a witness in his behalf, one Virgil Hampton, who was neither impeached, contradicted, nor shaken on cross-examination, and who testified that during the years 1920 to 1923, inclusive, he traded at B. F. Kelly's store and worked there in the evenings. This witness swears positively that during this period he saw the appellant sign a note which the appellee brought to him, and it is admitted that the note sued on is the only note which appellant ever executed to appellee. This witness left the vicinity in 1924, and is positive that he saw the note signed there in 1922 or 1923.

It is argued by appellee's counsel that the admitted fact that the copy of the note filed with the petition pursuant to the Court's order showed the date "1929" is evidence that 1929 was the true date of the original note, but the fact that the copy bore this date does not conflict with the testimony of the appellant and his counsel that the figure "2" was visible under the "9" on the original note when inspected with a magnifying

glass. It is also argued by appellee's counsel that the fact that the word "Renewal" in B. F. King's handwriting appears on the note is evidence that, the note was executed in 1929 since the original loan to B. F. Kelly, according to appellee, was made in 1922. But it is entirely possible that the original loan was made by appellee to B. F. Kelly prior to 1922, and that when the second note was prepared by B. F. Kelly for the balance remaining unpaid in 1922 he marked it "Renewal" to indicate the fact that it was for the original debt previously contracted. Furthermore, it is entirely possible in view of the unique method employed to indicate the date of interest payments, namely, changing the date of the note, that B. F. Kelly who made these changes marked the note "Renewal" in order to indicate the note's extension by the changed dates.

The special Chancellor who tried the case did not state his reasons for believing that the note was executed in 1929, but it is indicated in the briefs that he was influenced to some extent by the fact that the appellant had endeavored to put his property beyond the reach of creditors. Apparently B. F. Kelly was at one time very prosperous, and the appellant, his nephew, was associated with him in business. It cannot be presumed that appellant was aware that he was protected by the statute of limitations, and although reprehensible, we cannot say that appellant's attempt to avoid a liability which he had incurred as surety was unnatural. In any event, suspicion cannot take the place of proof.

We are reluctant to reverse a chancellor's finding of fact, especially where the veracity of litigants is in question; but, in view of the belief engendered in us by the testimony and the sacredness with which the law regards the rights of sureties, we are constrained to reverse the judgment appealed from with directions to dismiss the petition.

Judgment reversed.